UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 19-60895-CV-GAYLES
MAGISTRATE JUDGE REID

PETER CUNNINGHAM,

      Petitioner,

v.

STATE OF FLORIDA,

      Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

### I. Introduction

The *pro se* Petitioner, **Peter Cunningham**, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, attacking his convictions and sentences entered following a jury verdict in Broward County Circuit Court, Case No. **F04-9086CF10A**.

This Cause has been referred to the Undersigned for consideration and report, pursuant to 28 U.S.C. § 636(b)(1)(B), (c); S.D. Fla. Admin. Order 2019-02; and the Rules Governing Habeas Corpus Petitions in the United States District Courts.

For its consideration of the amended petition [ECF No. 7] the Court has received the state's response to this Court's order to show cause [ECF No. 11], along with a supporting appendix [ECF Nos. 12, 13].

Construing the arguments liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 519, 520 (1972), Petitioner raises the following grounds:

**Claim 1**: Defense counsel was ineffective in arguing a boiler plate motion for judgment of acquittal. [ECF No. 7 at 4-6].

1

**Claim 2**: Defense counsel was ineffective in failing to object and move for a mistrial when the jury observed Petitioner wearing shackles during the trial. [ECF No. 7 at 6-7].

**Claim 3**: Appellate counsel was ineffective in failing to raise a fundamental error argument regarding the manslaughter jury instructions. [ECF No. 7 at 7-10].

**Claim 4**: The trial court erred in excluding the statements of the victim. [ECF No. 7 at 11-12].

**Claim 5**: The trial court erred in excluding the contents of a telephone conversation overheard by Petitioner. [ECF No. 7 at 12-14].

**Claim 6**: The trial court erred in refusing to allow Petitioner to exercise a peremptory challenge. [ECF No. 7 at 14-17].

After reviewing the pleadings, for the reasons stated in this Report, the Undersigned recommends that the petition be denied because Petitioner is not entitled to relief on the merits.

## II. Factual and Procedural History

**Charges**

On June 2, 2004, the state charged Petitioner with murder in the first degree, in violation of Fla. Stat. §§ 782.04(1) and 775.087 (count 1); and two counts of attempted first-degree murder, in violation of Fla. Stat. §§ 777.04(1) & (4), 782.04(1)(a), 775.087 (counts 2 & 3). [ECF No. 12, Ex. 2].

**Trial**

State Case

The state introduced the following evidence. [ECF No. 13, Trial Transcripts]. John Marzulli, Tommy Gargulio, and Jason Tavares had been friends since they were children. [T. 532, 660]. In September of 2002, Marzulli, Gargulio, and Gargulio's brother, Christian, were housemates, and Tavares was staying with them. [T. 532-533, 659].

On September 20, 2002, Marzulli and Gargulio gave Tavares money to buy some

marijuana because he knew where to purchase it. [T. 533-34, 597, 660-61]. 534, 597]. Tavares left the house around 5:30 or 6:00 p.m. and returned at 8:30 p.m., without the marijuana or the money. [T. 535-536, 662].

Tavares took Marzulli, Gargulio, and a third man named Teron Wells to get the money back. [T. 536, 604, 662-663]. Wells had been the middleman in the drug deal and knew Petitioner. [T. 631]. Tavares, Marzulli, and Gargulio intended to confront the person who took the money. [T. 541]. Gargulio and Marzulli believed that Tavares planned receive payment in jewelry if he could not get the money, and he did not care who he got the money from. [T. 632, 712-13]. Gargulio put a baseball bat in the trunk of the car. [T. 663].

Tavares was on a cell phone during the drive, and became more agitated as he spoke. [T. 706, 708, 749]. The four men arrived at an apartment complex. [T. 542]. A crowd of seven to eight people was standing near where they parked, and another man was standing in the street in front of the building. [T. 542, 667]. Marzulli did not recognize any of these men, who appeared to be between nineteen and twenty-four years old. [T. 546].

Tavares approached Petitioner, who was standing alone in the street. [T. 547]. Gargulio got out of the car but remained near the trunk, however, he did not open the trunk. [T. 549, 665, 667].

Petitioner and Tavares began arguing. [T. 550]. Petitioner denied knowing where the money was, saying that he had nothing to do with it. [T. 551]. Marzulli and Gargulio told Tavares to calm down. [T. 553, 670]. Tavares told Marzulli and Gargulio to grab Petitioner, who kept saying that he did not want any trouble. [T. 554, 617, 630, 670, 729]. Tavares got on his cell phone. [T. 553]. Marzulli turned away as Tavares walked away, still on his cell phone. [T. 555]. Gargulio moved toward the car, because he got "spooked" when he saw someone coming down the stairs [T. 556, 670]. Marzulli insisted that Gargulio was not armed. [T. 556].

3

Marzulli and Gargulio heard a gunshot. [T. 557, 671]. Marzulli turned and saw Tavares grab his leg and yell. [T. 557]. Tavares had been shot in the front of his leg. [T. 619]. Gargulio saw Tavares hopping across the parking lot. [T. 672]. Petitioner had a gun and was pointing it at Tavares. [*Id.*].

Marzulli and Gargulio saw Petitioner turn and point his gun at them and then at the group of men that was still standing nearby and start shooting. [T. 557-58, 673]. Marzulli and Gargulio ducked behind a car and were not hit by any gunfire. [T. 558, 672-673]. Marzulli and Gargulio heard between eight and ten shots. [T. 578, 682]. The shots were fired quickly and, except for the last one, Marzulli did not believe that they were aimed. [T. 634]. Marzulli kicked shell casings at the scene apart. [T. 621].

As Tavares limped toward Marzulli and Gargulio, Petitioner shot him one time in the back. [T. 579, 673-74]. As Gargulio and Marzulli tried to drag Tavares away, a car in which Petitioner was the passenger drove up and stopped in front of them. [T. 674]. Petitioner aimed his gun at Gargulio and Marzulli and told them that if they moved Tavares, they would die next. [T. 674]. The car then left. [T. 675].

Marzulli and Gargulio picked up Tavares and put him in Teron Wells's car, intending to take Tavares to the hospital. [T. 583, 675]. Police arrived, so Marzulli drove toward them. [T. 586]. They tried to help Tavares, but he died of a gunshot wound to his artery. [T. 587, 677, 827-28].

The trunk of Tavares's vehicle was open when the police arrived. [T. 712, 813]. Police found a cell phone and four shell casings on the ground. [T 796, 804]. In their statements to police, Marzulli and Gargulio did not initially mention the drug deal that led to the shooting. [T. 591-92, 679-81, 700-02].

Broward County police picked Petitioner up on an arrest warrant in New York on May 11,

4

2004. [T. 849]. He told them that he shot Tavares in self-defense. [T. 853].

Kamol Strickland, a friend of Petitioner, testified that he gave Petitioner a 9 mm. firearm to hold for him after Kamol missed a court date for violating his probation. [T. 917-18]. Kamol was not present at the scene of the shooting or in the car with Petitioner afterward. [T. 917, 919]. Kamol never saw the gun again and did not know where it was. [T. 920].

<u>Defense Case</u>

Petitioner testified in his own defense to the following. He was going to school to become a barber. [T. 964]. He cut hair for a neighbor named "Chris," who was a drug dealer. [T. 971-972]. Another neighbor, "Glasses," asked Petitioner for Chris's phone number, and Petitioner gave it to him. [T. 976]. Petitioner believed Glasses was planning to buy some marijuana. [T. 977]. He had no other involvement in the drug deal. [T. 1003].

Later, Petitioner saw Glasses sitting in the passenger seat of a van. [T. 981]. The driver of the van pointed a gun at Glasses and took a wad of money from him. [T. 985, 997]. Petitioner did not recognize the driver. [T. 984].

Glasses approached a crowd of his friends and told them what had happened. [T. 998]. The group was angry. [T. 998]. Petitioner said that he became afraid when he was told that the men who had the money would "'F' you up and they're from a gang." [T. 1000]. Petitioner left and drove to his girlfriend's house. [T. 1000].

When Petitioner returned home, he saw a group of more than ten men outside. [T. 1004]. His friend Kamol had given him a gun which Petitioner kept in his glove box. [T. 1006]. Concerned, he retrieved the gun and put it in his pants. [T. 1006-07]. He was almost at his own front door when three men approached him. [T. 1007]. One of these men pushed Petitioner up against the building and then dragged him to the side and "started asking me for names, where the

5

'F' is so and so." [T. 1008]. Petitioner tried to explain that he lived there and that they should calm down, but they would not allow him to leave [T. 1008]. One of the men got on his cell phone. [T. 1009]. The court prohibited Petitioner from testifying to what he overheard in this conversation. [T. 1010-18]. Petitioner became more afraid when he overheard the conversation. [T. 1022].

Petitioner saw two cars pull up and four men he did not recognize got out of one of the cars. [T. 1022-23]. One of the men opened the trunk, took out what appeared to be a gun out of a black box, and put it in his pocket. [T. 1026]. Officers found a black box on the front seat of the car that looked like the box Petitioner described. [T. 1027].

The men all approached Petitioner. [*Id.*]. One of these men was enraged. [T. 1027]. Tavares angrily pushed Petitioner back and threatened to kill Petitioner if he did not answer his questions. [T. 1028]. Petitioner begged the men to calm down. [T. 1028]. Marzulli and Gargulio told Petitioner they were going to force him in their car and throw him out on the highway. [T. 1031]. Petitioner did not know the man who took the drug money and Glasses was gone. [T. 1032]. He tried to call Chris, but Tavares began screaming to the other men to grab him and put him in the trunk of the car. [T. 1033]. When Petitioner heard this, he "felt like . . . if [he] didn't try to . . . defend [him]self or escape from these guys, [he] probably would not live to see another day." [T. 1034].

Petitioner spun around, pulled out his gun, and started firing while he ran away from the men. [*Id.*]. He was not aiming the gun and did not "want to shoot [any] of these guys." [*Id.*]. He fired so many shots because there were "a lot of them and the guy was armed, I just wanted to escape." [T. 1036]. He was afraid for his life. [*Id.*]. He did not back up his car up to the men and threaten them. [T. 1038]. Petitioner did not realize that he had shot anyone until later. [T. 1036].

Petitioner called his girlfriend and told her that something bad happened, that he had to

defend himself, and that he was going away. [T. 1164]. He did not call the police [T. 1040]. He was afraid of retaliation by the gang. [T. 1040]. Police arrested him over a year later in New York. [T. 1042].

When Petitioner talked to Detective Nicholson, he told the detective what happened and that he acted in self-defense, but did not tell the truth about where he had obtained the gun because he was afraid the police might reject his story because he did not have a permit. [T. 1043-47]. Petitioner later made a complete and accurate statement to Detective Berrena. [T. 1049].

**Judgment/Sentence**

The jury convicted him as to Count 1, to the lesser included offense of second-degree murder and as to Counts 2 and 3, to the lesser included offenses of attempted manslaughter with a firearm. [T. 1341-44]. The jury made a specific finding under Count 1, that Petitioner possessed and discharged a firearm which inflicted death and under Counts 2 and 3, that Petitioner possessed and discharged a firearm. [*Id.*].

The trial court sentenced Petitioner to a term of life imprisonment on Count 1 with a twenty-five-year mandatory minimum pursuant to Fla. Stat. § 775.087. [ECF No. 12-1 at 14-37]. On Counts 2 and 3, the court sentenced Petitioner to twenty years with a twenty-year minimum mandatory on each count, both to run concurrently with Count 1 but consecutively with each other. [*Id.*].

**Direct Appeal**

Petitioner appealed his conviction in Florida's Fourth District Court of Appeal ("Fourth DCA"). [ECF No. 12-1 at 39-100]. Among other claims, he raised the arguments he raises in the instant case under Claims 4, 5, and 6. [ECF No. 7 at 11-17; ECF No. 12-1 at 61-77].

The Fourth DCA issued a written opinion in *Cunningham v. State*, 22 So. 3d 127 (Fla. 4th

DCA 2009), affirming his conviction but reversed and remanded for resentencing. On February 28, 2011, the trial court entered an order reflecting that Counts 2 and 3 were to run concurrently to each other, but consecutively to the sentence imposed under Count 1. [ECF No. 12-1 at 149].

**Post-Conviction Rule 3.850 Motion**

Petitioner filed a March 11, 2011 Rule 3.850 motion and an August 16, 2011 Rule 3.850 amended motion with the trial court which alleged under claim 2, that defense counsel was ineffective in failing to object and move for a mistrial when the jury observed Petitioner wearing shackles during the trial; under claim 7, that defense counsel was ineffective in failing to challenge the manslaughter jury instructions; and under claim 8, that defense counsel was ineffective in arguing a boiler plate motion for judgment of acquittal. [ECF No. 12-1 at 153-221]. Petitioner raises these arguments in the instant case under Claims 1, 2, and 3. [ECF No. 7 at 4-10]. The state filed a response. [ECF No. 12-1 at 222-37]. Petitioner filed a reply. [ECF 12-4 at 233]. The trial court denied the motion for the reasons set forth in the state's response. [ECF No. 12-4 at 252-58].

Petitioner appealed, challenging the trial court's ruling on all claims raised. [ECF No. 12-4 at 264-300; 12-5 at 1-14]. The Fourth DCA issued a written opinion reversing and remanding for the following reason:

> In ground two, Cunningham claimed ineffective assistance of trial counsel for failure to object and move for mistrial when the jury observed him wearing shackles during trial. The State's response and record attachments do not refute this claim. *See Torres v. State*, 9 So. 3d 746 (Fla. 4th DCA 2009).

*Cunningham v. State*, 174 So. 3d 436 (Fla. 4th DCA 2015). Mandate issued on October 9, 2015. [ECF No. 12-5 at 47].

On remand, the trial court conducted an evidentiary hearing. [ECF No. 13-13]. Subsequently, the court issued a written order denying the claim because Petitioner failed to establish prejudice. [ECF No. 12-5 at 49-52].

8

Petitioner appealed. [ECF No. 12-5 at 57-94]. The Fourth DCA *per curiam* affirmed without written opinion in *Cunningham v. State*, 252 So. 3d 1261 (Fla. 4th DCA 2018). Petitioner filed a motion for rehearing, which the Fourth DCA denied. [ECF No. 12-5 at 123-32]. Mandate issued September 28, 2018. [ECF No. 12-5 at 134].

**Petitions for Writ of Habeas Corpus in State Court**

On September 15, 2011, Petitioner filed a petition for writ of habeas corpus in the Fourth DCA alleging ineffective assistance of appellate counsel for failing to argue on direct appeal that the trial court committed fundamental error by failing to challenge the jury instructions. [ECF No. 12-5 at 136-159]. On June 11, 2012, the Fourth DCA denied the petition on the merits. [ECF No. 12-5 at 180]. Petitioner moved for rehearing and rehearing *en banc*. [ECF No. 12-5 at 182-86]. On June 27, 2012, the Fourth DCA denied Petitioner's motion. [ECF No. 12-5 at 187].

On April 8, 2013, Petitioner filed another petition for writ of habeas corpus in the Fourth DCA, challenging appellate counsel's failure to argue that the jury instruction for manslaughter by intentional act constituted fundamental error. [ECF No. 12-5 at 189-212]. Petitioner raises a similar argument under Claim 3 in the instant petition. [ECF No. 7 at 7-10]. The Fourth DCA denied the petition as untimely and successive. [ECF No. 12-5 at 214]. Petitioner filed a motion for rehearing and for rehearing *en banc*, which the Fourth DCA denied. [ECF No. 12-5 at 216-23]. Petitioner appealed the Fourth DCA's decision in the Florida Supreme Court by filing a petition for writ of mandamus. [ECF No. 12-5 at 225-36]. The Supreme Court denied the petition in *Cunningham v. State*, 143 So. 3d 917 (Fla. 2014). Petitioner filed a motion for rehearing, which the Supreme Court denied on April 15, 2014. [ECF No. 12-5 at 246-56].

On September 2, 2014 Petitioner filed another petition for writ of habeas corpus in the Fourth DCA alleging manifest injustice and ineffective assistance of appellate counsel. [ECF No.

12-5 at 258-70]. The Fourth DCA dismissed the petition as untimely and successive. [ECF No. 12-5 at 272]. The Fourth DCA denied Petitioner's subsequent motion for rehearing. [ECF No. 12-5 at 274-280].

On July 20, 2017, Petitioner filed yet another petition for writ of habeas corpus alleging manifest injustice. [ECF No. 12-5 at 282-91]. The Fourth DCA issued an order dismissing the petition as untimely and successive and cautioning Petitioner with sanctions for further frivolous filings. [ECF No. 12-5 at 294].

**28 U.S.C. § 2254 Petition**

Petitioner next came to this court filing a § 2254 petition on April 1, 2019. [ECF No. 1 at 50]. In response to this Court's order regarding non-compliance and for amended petition, the Petitioner filed an amended petition on May 7, 2019. [ECF No. 7]. The state filed a response to this court's order to show cause, with supporting exhibits. [ECF Nos. 11, 12, 13]. The state concedes that the petition is timely and addresses the merits of all claims. [ECF No. 11].

### III. Exhaustion

The Respondent argues that Petitioner's claims are unexhausted and procedurally defaulted from federal habeas review for a variety of reasons. [ECF No. 11].

Pursuant to 28 U.S.C. § 2254(b)-(c), petitioners must exhaust their claims before presenting them in a federal habeas petition. When petitioners do not properly present their claims to a state court by exhausting those claims and complying with the applicable state procedure, § 2254 may bar federal review of those claims in federal court. *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (relying upon 28 U.S.C. § 2254(b)-(c)). When it is unclear or less efficient to resolve whether the additional restriction in § 2254(d) applies, federal courts may also deny writs of habeas corpus under § 2254 by engaging in *de novo* review, a more favorable standard, as a habeas petitioner

would surely not be entitled to a writ under § 2254(d) if the claim would fail under *de novo* review. *See, e.g.*, *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010); *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014); *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1109-10 (11th Cir. 2012).

Pursuant to 28 U.S.C. § 2254(b)(2), the Court has authority to address unexhausted claims when a denial is appropriate on the merits. *See also Berguis v. Thompkins*, 560 U.S. 370, 390 (2010). To promote judicial efficiency, the merits of the allegedly unexhausted claims has been addressed within this Report.

### IV. Governing Legal Principles

This Court's review of a state prisoner's federal petition for habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104−132, 110 Stat. 1214 (1996). "The purpose of [the] AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, GDCP*, 818 F.3d 600, 642 (11th Cir. 2016) (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)). In fact, federal habeas corpus review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" *Id.* at 642 (quoting *Hill v. Humphrey*, 662 F.3d 1335, 1343 (11th Cir. 2011)), and is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

The federal habeas court is first tasked with identifying the last state court decision, if any, that adjudicated the claim on the merits. *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court is not required to issue an opinion explaining its rationale, because even the summary rejection of a claim, without explanation, qualifies as an adjudication

on the merits which warrants deference. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). *See also Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018).

Where the claim was "adjudicated on the merits" in the state forum, § 2254(d) prohibits relitigation of the claim unless the state court's decision was (1) "**contrary to**, or involved **an unreasonable application of**, clearly established Federal law,[1] as determined by the Supreme Court of the United States;" or, (2) "based on an **unreasonable determination** of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *Harrington*, 562 U.S. at 97-98. *See also Williams v. Taylor*, 529 U.S. 362, 413 (2000). When relying on § 2254(d)(2), a federal court can grant relief if the state court rendered an **erroneous factual determination**. *Tharpe v. Warden*, 834 F.3d 1323, 1337 (11th Cir. 2016).

Because the "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court," *Burt v. Titlow*, 571 U.S. 12, 20 (2013), federal courts may "grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" *Tharpe*, 834 F.3d at 1338 (11th Cir. 2016) (quoting *Harrington*, 562 U.S. at 102). This standard is intentionally difficult to meet. *Harrington*, 562 U.S. at 102.

Petitioner alleges **ineffective assistance of counsel**. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during

---

[1]"Clearly established Federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the Supreme Court at the time the state court issues its decision. *White v. Woodall*, 572 U.S. 415, 419 (2014); *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

criminal proceedings against them. *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). When assessing counsel's performance under *Strickland*, the court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate that: (1) his or her counsel's **performance was deficient**, i.e., the performance fell below an objective standard of reasonableness; and, (2) he or she suffered **prejudice** as a result of that deficiency. *Strickland*, 466 U.S. at 687-88.

To establish **deficient performance**, Petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *Strickland, supra. See also Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009). The review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Regarding the **prejudice** component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *Id.* at 697. Further, counsel is not ineffective for failing to raise non-meritorious issues. *Chandler*, 240 F.3d at 917. Nor is counsel required to present every non-frivolous argument. *Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

Furthermore, a § 2254 Petitioner must provide factual support for his or her contentions

13

regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir.1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012).

Petitioner also alleges **ineffective assistance of appellate counsel**. In order to establish ineffective assistance of appellate counsel,        the        petitioner        must        show "(1) appellate counsel's performance    was    deficient,    and    (2)    but    for counsel's deficient performance he would have prevailed on appeal." *Shere v. Sec'y, Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008) (citing *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *Strickland*, 466 U.S. 668 (1984)).

## V. Discussion

Petitioner alleges under **Claim 1** that defense counsel was ineffective in arguing a boiler-plate motion for judgment of acquittal. [ECF No. 7 at 4-6].

A federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." *Cavazos v. Smith*, 565 U.S. 1, 4 (2011) (citing *Renico v. Lett*, 559 U.S. 766, 773 (2010)). In *Cavasos*, the Supreme Court emphasized that the governing standard of review is articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979).

Under *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "The standard for weighing the constitutional sufficiency of the evidence is a limited one. It is not required that the evidence rule out every hypothesis except that of guilt beyond a reasonable doubt." *Martin v. Alabama*, 730 F.2d 721, 724

(11th Cir. 1984) (internal citations omitted). This Court must defer to the jury's objectively reasonable resolution. In *Coleman v. Johnson*, 566 U.S. 650, 656 (2012), the Supreme Court explained that the only question when reviewing the state court's ruling under *Jackson* is "whether the finding was so insupportable as to fall below the threshold of bare rationality." Such a determination is entitled to deference under the AEDPA. *Id.*

As will be recalled, Petitioner was charged with first-degree murder in violation of Fla. Stat. § 782.04(1)(a) (2002), which provides: "The unlawful killing of a human being: 1. When perpetrated from a premeditated design to effect the death of the person killed or any human being . . . is murder in the first degree and constitutes a capital felony." Petitioner was also charged with attempted first-degree murder, in violation of Fla. Stat. § 777.04(1) (2002), which provides in relevant part: "A person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt."

After resting the defense case, Petitioner's trial counsel moved for judgment of acquittal as follows:

> Your Honor, at this point in time I would renew our motion for directed verdict and judgement of acquittal, but the circumstances have naturally changed. At this point in time the defendant has testified that this was self-defense. And the circumstances of the shooting and the perspective of what occurred to cause this to happen is now in front of this jury for consideration. However, Judge, based on the case law which the Court is eminently familiar with we've discussed, regarding the State's burden to rebut self-defense, once there's been some evidence to establish it and I would certainly establish there's a prima facie case of a self-defense case that needs to be established beyond a reasonable doubt was not a motivation for the shooting. In that standard, Judge, in light of the prevailing case law, I believe this Court should direct a verdict in favor of the Defense on that issue.

[T. 1179-80].

The evidence adduced at trial reveals that Petitioner was in possession of firearm and he

admitted to indiscriminately firing his weapon, which showed a reckless disregard for human life. [T. 1034-36]. His self-defense claim was sufficiently challenged by the state's evidence to send the question to the jury. Specifically, Marzulli and Gargulio saw Petitioner turn and point his gun at them and then at the group of men that was still standing nearby and start shooting. [T. 557-58, 673]. Marzulli and Gargulio only avoided getting shot because they ducked behind a car. [T. 558, 672-673]. Marzulli and Gargulio also saw Petitioner point his gun at Tavares, after Tavares had been shot in the leg, and fire a shot into Tavares's back. [T. 579, 673-74].

The state introduced other evidence which supported the eyewitness testimony. Officer Hodges testified that he collected four shell casings at four different places at the scene, showing that a weapon was fired indiscriminately at all who were present. [T. 804-05]. The medical examiner testified that the victim had a gunshot wound on his leg and on his back, the latter was fatal. [T. 860-61]. Petitioner conceded that he left the scene and returned with a gun. [T. 1000].

Furthermore, after the shooting, Petitioner fled to New York where he was later picked up on an arrest warrant. Florida law is clear that "[w]hen a suspected person in any manner attempts to escape or evade a threatened prosecution by flight, concealment, resistance to lawful arrest, or other indications after the fact of a desire to evade prosecution, such fact is admissible, being relevant to the consciousness of guilty which may be inferred from such circumstance." *Thomas v. State*, 748 So. 2d 970, 982 (Fla. 1999) (quoting *Straight v. State*, 397 So. 2d 837 (Fla. 1981)). Given the facts adduced at trial, the evidence was sufficient to go to the jury.

Having reviewed the record, the evidence in this case was more than sufficient to support the Petitioner's conviction. A rational trier of fact could have found that Petitioner did not act in self defense. *See Jackson*, 443 U.S. at 319. This Court must defer to the jury's judgment as to the weight and credibility of the evidence. *See Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987)

(citing *Jackson*, 443 U.S. at 326). Even if there was some evidence which gave support to Petitioner's theory of innocence, such a fact does not warrant habeas corpus relief. *See Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

Therefore, the rejection of the claim by the state courts is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Petitioner alleges under **Claim 2** that defense counsel was ineffective in failing to object and move for a mistrial when the jury observed Petition wearing shackles during the trial. [ECF No. 7 at 6-7].

During the Rule 3.850 proceedings, the state trial court conducted an evidentiary hearing on this issue. [ECF No. 13-1, Evidentiary Hearing Transcript].

Petitioner testified to the following. When he took the stand at trial, he walked directly in front of all the jurors and they saw his shackles. [*Id.* at 9-11, 13]. He made eye contact with the jurors. [*Id.* at 13]. His attorney was frantically motioning for him to sit down because his attorney saw the shackles. [*Id.* at 9-10]. The jurors saw him for a short period of time in the shackles, however, he could not be certain exactly how long. [*Id.* at 40-41]. Defense counsel did not move for a mistrial and Petitioner did not ask him to seek a mistrial. [*Id.* at 16].

The prosecutor testified as follows. Defense counsel announced that Petitioner was going to testify. [*Id.* at 59]. Petitioner stood, but before he could make it around the defense table, the court asked the jurors to exit the courtroom. [*Id.* at 59-60].

Petitioner's primary trial attorney provided the following testimony. He called Petitioner to testify. [*Id.* at 77]. He looked at Petitioner's face and realized something was wrong. [*Id.*]. As a result, he immediately asked for a sidebar, but the court was already sending the jurors out of the

courtroom. [*Id.* at 77-78]. He believed that at most, only two jurors could see the shackles for 10 to 12 seconds. [*Id.* at 78, 80-81]. He did not move for a mistrial because he and Petitioner were happy with the jury. [*Id.* at 80].

Petitioner's other trial counsel testified briefly that she took meticulous notes throughout the trial and did not find any mention of his walking in front of the jury in shackles. [*Id.* at 64]. She also had no independent recollection of Petitioner's shackles being an issue. [*Id.*].

Following the evidentiary hearing, the trial court issued an order denying Petitioner's claim. After summarizing the testimony, the court concluded:

> Defendant was not forced to stand trial in prison garb or shackles. What happened in this case was purely an inadvertent oversight by the court personnel to remove the shackles after Defendant was brought into the courtroom after the lunch break.

> From the testimony, this Court surmises that neither of Defendant's attorneys were concerned about shackles because they were not an issue in this case. This Court is very familiar with both of the defense attorneys. Both are very meticulous and zealous in the defense of their clients.

> Specifically, . . . [defense counsel] had no notes regarding this incident, which leads this Court to agree with the State that a ten second sighting, if the jurors even saw the shackles at all, was harmless and no mistrial would have been granted by this Court.

> This Court notes that the Florida Supreme Court has held in several cases that "a juror's or prospective juror's brief, inadvertent view of a defendant in shackles is not so prejudicial as to warrant a mistrial." *See Knight v. State*, 76 So. 3d 879 (Fla. 2011); *Phillips v. State*, 39 So. 3d 296 (Fla. 2010) and *Hernandez v. State*, 4 So. 3d 642 (Fla. 2009).

> Lastly, Defendant has failed to show prejudice. He and his attorney liked the jury and his desire to keep them paid off because he was convicted of a lesser included offense.

[ECF No. 12-5 at 51-52].

As is noted by the state trial court, in Florida an inadvertent view by jurors of a defendant in shackles does not warrant a mistrial. *Knight v. State*, 76 So. 3d 879, 887 (Fla. 2011) (citing

*Hernandez v. State*, 4 So. 3d 642, 658 (Fla. 2009)). *See, e.g.*, *Singleton v. State*, 783 So. 2d 970, 976 (Fla. 2001) (explaining that the jurors' brief glances of the defendant while he was being transported in prison garb and shackles, standing alone, were not so prejudicial as to require a mistrial); *Stewart v. State*, 549 So. 2d 171, 174 (Fla. 1989) (finding that a new trial was not warranted where the defendant's shackles were ruled unobtrusive and necessary by the trial court and were only barely visible beneath the table); *Heiney v. State*, 447 So. 2d 210, 214 (Fla. 1984) (holding that the jurors' possible inadvertent and brief sight of the defendant being transported into the courtroom in chains did not justify a mistrial); *Neary v. State*, 384 So. 2d 881, 885 (Fla. 1980) (concluding that the jurors' inadvertent sight of the defendant being brought into the courtroom in handcuffs was not so prejudicial as to require a mistrial).

Moreover, Petitioner's claim lacks merit as the established rule in the Eleventh Circuit is that "a brief and fortuitous encounter of the defendant in handcuffs is not prejudicial and requires an affirmative showing of prejudice by the defendant." *Allen v. Montgo*mery, 728 F.2d 1409, 1414 (11th Cir. 1984) (quoting *Wright v. Texas*, 533 F.2d 185, 187 (5th Cir. 1976)).

Here, the trial court accepted the testimony at the evidentiary hearing that the jurors got a brief glimpse of the Petitioner's shackles. Consistent with Florida and Federal law, the trial court decided that this evidence was insufficient to warrant a motion for mistrial. "Federal habeas courts generally defer to the factual findings of state courts, presuming the facts to be correct unless they are rebutted by clear and convincing evidence." *Adkins v. Warden, Holman CF*, 710 F.3d 1241, 1249 (11th Cir. 2013) (quoting *Jones v. Walker*, 540 F.3d 1277, 1288 n. 5 (11th Cir.2008)). *See also* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct."). There is no clear and convincing evidence in the record which rebuts the state trial court's conclusion.

Nothing in the record supports the conclusion that the trial court erred in denying Petitioner's claim that counsel was ineffective for failing to move for a mistrial under these circumstances. Therefore, the rejection of the claim by the state courts is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Petitioner alleges under **Claim 3** that appellate counsel was ineffective in failing to raise a fundamental error argument regarding the manslaughter jury instruction. [ECF No. 7 at 7-10]. Petitioner argues that appellate counsel should have alerted the Fourth DCA to the April 8, 2010 opinion in *State v. Montgomery*, 39 So. 3d 252 (Fla. 2010) and requested that the court withdraw its January 8, 2010 mandate and consider whether Petitioner was entitled to relief under *Montgomery*.

After the mandate issued in Petitioner's direct appeal, the Supreme Court issued an opinion in *State v. Montgomery*, 39 So. 3d 252 (Fla. 2010). Because he believed it applied to his case, he contacted his appellate counsel in a July 15, 2010 letter. [ECF 12-5 at 210]. On July 27, 2010, counsel responded by explaining that *Montgomery* was not applicable to Petitioner's case. [*Id.*].

The trial court instructed the jury in Petitioner's case on manslaughter by culpable negligence and manslaughter by intentional act. In *Montgomery*, 39 So. 3d at 260, the Florida Supreme Court held **"**that manslaughter by act does not require proof that the defendant intended to kill the victim and . . . the use of the standard jury instruction on manslaughter constituted fundamental error." Petitioner's appellate counsel correctly noted that several courts had held that where, like in Petitioner's case, the jury is also instructed on manslaughter by culpable negligence, the error identified in *Montgomery* did not occur. [ECF No. 12-5 at 210] (citing *Singh v. State*, 36 So. 3d 848 (Fla. 4th DCA June 2, 2010)).

The jury in Petitioner's case was instructed on the lesser included offense of manslaughter by culpable negligence under Count 1, which did not involve an intentional killing, and the jury still chose to return a verdict for second degree murder. The jury found Petitioner guilty of attempted manslaughter and, as a result, his argument is inapplicable. Thus, Petitioner was not entitled to relief under *Montgomery*, even if appellate counsel had raised the argument on direct appeal. Petitioner has failed to establish that he would have prevailed on appeal. *See Shere*, 537 F.3d at 1310 (citing *Robbins*, 528 U.S. at 285-86; *Strickland*, 466 U.S. 668).

Petitioner also argues that he was entitled to relief on direct appeal in light of *Haygood v. State*, 109 So. 3d 735 (Fla. 2013). This case was decided on February 14, 2013, long past the period during which Petitioner could have sought a recall of the mandate. *See* Fla. R. App. P. 9.340(a) (must seek a recall of the mandate within 120 days). Even if *Haygood* was applicable to Petitioner's case, appellate counsel is not required to anticipate changes in the law. *See Walton v. State*, 847 So. 2d 438, 445 (Fla. 2003); *Gervasoni v. State*, 766 So. 2d 478, 479-80 (Fla. 5th DCA 2000).

The rejection of this claim by the Fourth DCA in the writ of habeas corpus proceedings is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Petitioner alleges under **Claim 4** that the trial court erred in excluding the statements of the victim. [ECF No. 7 at 11-12]. Petitioner does not describe the statements, and instead refers to the state's answer brief on direct appeal. [*Id.*]. The state noted on direct appeal that defense counsel sought to introduce comments made by Tavares in the car on the way to the scene of the crime that he planned to take jewelry if he did not get his money back. [ECF No. 12-1 at 120-21]. Petitioner argues these statements were admissible as a hearsay exception to show that the victim planned to

21

harm Petitioner. [ECF No. 7 at 11-12].

As a preliminary matter, errors of state evidentiary law are not a basis for federal habeas relief unless they result in constitutional error. "[F]ederal courts will not generally review state trial courts' evidentiary determinations." *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1295 (11th Cir. 2014). Habeas relief is warranted only when the error "so infused the trial with unfairness as to deny due process of law." *Id.* (citation omitted).

Florida law defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fla. Stat. § 90.801(1)(c). "Except as provided by statute, hearsay evidence is inadmissible." Fla. Stat. § 90.802.

Tavares's statements in the car constituted inadmissible hearsay and Petitioner fails to point to any exception which would have rendered the statements admissible. In addition, Petitioner cannot establish he was denied due process of law. Tavares's statements were introduced at trial through the testimony of Marzulli and Gargulio. Specifically, these witnesses testified that when driving to the scene of the crime, Tavares, Marzulli, and Gargulio intended to confront the person who took the money. [T. 541]. Gargulio and Marzulli believed that Tavares planned to get some jewelry if he could not get the money, and he did not care who he got the money from. [T. 632, 712-13]. They further testified that Tavares was angry when he confronted Petitioner and Gargulio and Marzulli were trying to calm Tavares down. [T. 550-21, 553, 670]. Because the jury heard ample evidence of Tavares's state of mind from other witnesses, introducing Tavares's hearsay statements would have been cumulative.

The trial court's rejection of this claim, affirmed by the appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be

disturbed here. *See Williams*, 529 U.S. at 413.

Petitioner alleges under **Claim 5** that the trial court erred in excluding the contents of Tavares's side of a telephone conversation which Petitioner overheard. [ECF No. 7 at 12-14].

The following exchange took place during defense counsel's direct examination of Petitioner:

**Defense Counsel**: Did you, was anyone on a cell phone during that period of time?

**Petitioner**: The, one of the guys, the guy that had the skull cap he went on his phone.

**Defense Counsel**: What, what did you overhear him saying on the phone?

**Prosecutor**: Objection, hearsay.

**The Court**: Well, the question requires a yes or no, was he able to hear what was said. Were you able to hear what he was saying on the phone?

**Petitioner**: Yes.

**The Court**: Next question.

**Defense Counsel**: Did you believe what was said involved you?

**Petitioner**: Yes, it involved me.

**Prosecutor**: Objection, speculation.

**The Court**: Sustained.

**Defense Counsel**: Did what you overhear make you fearful?

**Petitioner**: Yes.

**Defense Counsel**: How did it make you fearful?

**Petitioner**: I mean, the guy was telling –

**Prosecutor**: Objection as to what somebody else said.

**Defense Counsel**: May I come sidebar, Judge?

> **The Court**: No, because the question says how did it make you feel, fearful. He said he felt fearful, but I don't want him to say what someone else said. So, I'm going to deny access. Just ask questions that don't require hearsay responses.

[T. 1009-10]. Soon after, defense counsel and the trial court further discussed the introduction of

Tavares's statements, outside the presence of the jury.

> **Defense Counsel**: Let me just say again, I think, you know, I understand the Court is eminently familiar with the law but I want the record to be certainly clear that we're not introducing these for the truth of the matter asserted, we are introducing them for the affect they had on the hearer.

> **The Court**: Well, he already said he was scared and I gave you kind of wide latitude in what he was told, you know, he was scared but he left the area and went to a place of safety, the girlfriend's house but he said he was still concerned and he went back then he sees these guys and he puts the gun in his pants.

> **Defense Counsel**: Right. And then he's confronted and then more statements are made to him, specific statements about what's about to happen to him, threats against his person, threats affecting his very life.

> **The Court**: But the only statements that are relevant is what Mr. Marzulli, Mr. Gargulio, and what Mr. Tavares may have said to him. There is testimony in this record that when Mr. Tavares got out of the car he went directly to Mr. Cunningham, so there was some conversation and it was not heard. I mean, I'm certainly willing to entertain that, you know, whatever was said to him by Mr. Tavares, put him in a state of mind.

> **Defense Counsel**: Certainly.

> **The Court**: What somebody else said that did not come into this courtroom to testify is rank hearsay, I'm not going to allow it in. I know what you think, and murder cases are different, but the rules of evidence don't change. So, I'm reading, I will be happy to give you Ehrhardt, I've read it a couple of times and I think I need to read it again while I'm at the conference next week.

[T. 1017-18].

Here, the state court applied state evidentiary law in denying defense counsel's attempt to

introduce the Taveres's hearsay statements. Errors of state evidentiary law are not a basis for

federal habeas relief unless they result in constitutional error. "[F]ederal courts will not generally

review state trial courts' evidentiary determinations." *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760

F.3d 1284, 1295 (11th Cir. 2014). Habeas relief is warranted only when the error "so infused the trial with unfairness as to deny due process of law." *Id.* (citation omitted).

Similar to claim 4, Tavares's statements on the night in question went to Petitioner's state of mind. Petitioner felt threatened by Tavares's comments during his phone call and, therefore, acted in self defense when he shot Tavares. As is indicated above, pursuant to Florida law, "a homicide victim's state of mind prior to the fatal event generally is neither at issue nor probative of any material issue raised in the murder prosecution." *Woods*, 733 So. 2d at 987. Tavares's statements clearly constituted inadmissible hearsay and Petitioner has failed to point to any hearsay exception which would have rendered the statements admissible. Petitioner fails to establish that the trial court's decision denied him due process. In fact, the court allowed Petitioner to testify to his state of mind upon hearing Tavares's phone call. Specifically, that he was "fearful."

The trial court's rejection of this claim, affirmed by the appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

Petitioner alleges under **Claim 6** that the trial court erred in refusing to allow Petitioner to exercise a peremptory challenge. [ECF No. 7 at 14-17].

Petitioner takes issue with the trial court's failure to allow defense counsel to use a peremptory strike against Ms. Robertson. This potential juror gave the following answers during jury selection.

> **Prosecutor**: Ms. Robertson, you have a criminal lawyer in your building, did I get that right?
>
> **Juror Robertson**: Yeah.
>
> **Prosecutor**: Okay. Anything about that, the opposite of the question as was asked to Ms. Gorfields, does that - you take messages, presumably you see clients of that persons [sic] who come through the building?

**Juror Robertson**: Yes.

**Prosecutor**: Any anything about that where you are going to sit and say make the job a little easier for . . . [defense counsel]?

**Juror Robertson**: No.

**Prosecutor**: Okay. Are you going to be able to hold the, this case, are you going to take the facts as given to you, apply the law Judge Holmes gives you, doesn't matter whether it is [the prosecutor or defense counsel], none of that matters really. You are here to just factually say you believe this happens and fits into the law or it doesn't.

**Juror Robertson**: Yes.

[T. 339-40].

**Defense Counsel**: Ms. Levy, I know that you had a concern and thank you for sharing that with us, we appreciate that. I'm not sure how it'll play out but we should be fine with it. Ms. Robertson, how do you feel?

**Juror Robertson**: I'm okay.

**Defense Counsel**: And is there anything that I've mentioned or that you felt like maybe would you comment about or should have commented about or haven't so far?

**Juror Robertson**: No.

**Defense Counsel**: Are you comfortable with everything both sides have said?

**Juror Robertson**: Yes.

**Defense Counsel**: Nothing to distract from you paying almost complete attention to what happens in this courtroom?

**Juror Robertson**: No.

[T. 403-04].

The following colloquy took place as regards the peremptory challenge:

**Defense Counsel**: Exercise a peremptory as to Ms. Robertson.

**The Court**: Okay.

26

**Prosecutor**: Can I ask for a gender-neutral reason as to Ms. Robertson?

**The Court**: It's the fourth white woman. Why are you striking white people, is it because your client is a black male?

**Defense Counsel**: No, Your Honor. I just don't know enough about her that she really didn't, she was not particularly responsive to not volunteer anything.

**The Court**: Because you didn't ask her anything, that's the problem. That same excuse has been given, that was *Melbourne*,[2] that was the sole issue in *Melbourne*. The person was not responsive to my questions, that's what the prosecutor said. The defense attorney pointed out, Judge, he didn't ask the person any questions so how could she not be responsive. So, can you point to something because it does appear that now you are striking all white people and females, at that. I have to have a reason on the record.

**Defense Counsel**: Just a minute, Your Honor.

**The Court**: I don't want you to keep anybody you don't like but I want it to be genuine.

**Defense Counsel**: We are just not comfortable with her. We exercise a peremptory if the Court would allow.

**The Court**: Mr. Rossman.

**Prosecutor**: If I opine that I just wasn't comfortable with somebody it would be denied.

**The Court**: [Defense counsel], you have to give me something to hang my hat on otherwise it would appear that I'm making the State give genuine reasons. You know this Court, I play right down the middle, I don't have a favorite.

**Defense Counsel**: One more second?

**The Court**: You may.

**Defense Counsel**: For the record we've left other white females on the jury.

**The Court**: That's not the standard. The standard is who have you stricken as opposed to who you left. Because they are not all, who is left is not similarly situated. It is who you struck that I didn't really ask you questions for but [the prosecutor] did bring out the fact that you, you were striking white females.

---

[2] *Melbourne v. State*, 679 So. 2d 759, 764-65 (Fla. 1996).

27

**Defense Counsel**: I'm sorry, I have no additional grounds at this point to give for her.

**The Court**: All right. Then I'm going to deny that peremptory. If you can give me something to hold on to because the State has appellant rights in this case also and I don't want the appellate courts to think that this Court required more for the State than from the Defense in exercising peremptories and as [the prosecutor] has pointed out, it does appear that the Defense is striking white females. Gender wise they are a protected class.

**Defense Counsel**: Respectfully object to the Court's refusal to allow a peremptory and exercise a peremptory as to Ms. Levy, number five.

**The Court**: Can you articulate a reason for her?

**Prosecutor**: I'm not even asking, I understand.

**The Court**: No, what's good for the goose is also good for the gander, whatever a gander is. [Defense counsel], would you like to put on the record why you are striking Ms. Levy, who is a white female?

**Defense Counsel**: She is, Judge -- until she came sidebar and explained she has a nervous disorder that's being treated by some medication, she's not sure which, or that she's taking it or how it would affect her.

**The Court**: Or she's got it but never taken it before, but she pulled it out.

**Defense Counsel**: She's about to pass out, you know, I just under those circumstances, Judge, I think –

**The Court**: That will be granted.

**Defense Counsel**: Thank you.

**The Court**: But Robertson remains.

[T. 433-36].

Every person charged with a crime is entitled to a fair trial before an impartial jury of his or her peers. Art. 1, Sec. 16, *Florida Constitution*. The jury venire from which the petit jury is chosen must represent a fair cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522 (1975).

28

Accordingly, the right to peremptory challenges is to "aid and assist" in the selection of an impartial jury and is not to be used "as a scalpel to excise" an identifiable group from a representative cross-section of society for to do so would "encroach upon the constitutional guarantee of an impartial jury." *State v. Neil*, 457 So. 2d 481,486 (Fla. 1984) (Peremptory challenges cannot be exercised solely on the basis of race). *See also State v. Slappy*, 522 So. 2d 18 (Fla.), *cert. denied*, 487 U.S. 1219 (1988). The Florida courts look to both the Florida Constitution and Federal Constitution's guarantee of the right to an impartial jury and equal protection provisions. *See Melbourne v. State*, 679 So. 2d 759, 764 (Fla. 1996).

The Florida Supreme Court stated the procedure for evaluating allege racial bias in the exercise of peremptory challenges as follows:

> A party objecting to the other side's use of a peremptory challenge on racial grounds must: (a) make a timely objection on that basis; (b) show that the venire person is a member of a distinct racial group, and (c) request that the court ask the striking party its reason for the strike.

*Id.* at 764. The burden then shifts to the party who made the strike to provide a race neutral explanation. *Id.* If the reason given is race neutral and "the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike would be sustained." *Id.*

Consistent with *Melbourne*, after defense counsel made a peremptory challenge to Ms. Robertson, the state objected to defense counsel's use of a peremptory strike against another white female. As a result, the court asked defense counsel for a reason for the strike. Defense counsel conceded he could not provide a race- or gender-neutral reason for the strike and argued that Ms. Robertson was non-responsive to questions posed by the attorneys. [ECF No. 1 at 16]. Review of the record refutes defense counsel's argument. Ms. Robertson was simply answering direct questions posed by the attorneys. She made clear that she would not be biased against the state due

to her personal connection to a defense attorney. [T. 339]. She confirmed that she would apply the law to the facts of the case pursuant to the court's instructions. [*Id.*]. She answered in the negative when asked by defense counsel whether she would be distracted during the trial. [T. 404]. Defense counsel failed to meet the burden imposed by *Melbourne*. As a result, the trial court did not err in refusing to permit defense counsel to make a peremptory challenge of Ms. Robertson.

The trial court's decision, affirmed by the appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

### VII. Cautionary Instruction Re *Clisby* Rule

Finally, this Court has considered all of Petitioner's claims for relief, and arguments in support. *See Dupree v. Warden*, 715 F.3d 1295, 1298 (11th Cir. 2013) (citing *Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992)). For all of his claims, Petitioner has failed to demonstrate how the state courts' denial of the claims, to the extent they were considered on the merits in the state forum, were contrary to, or the product of an unreasonable application of, clearly established federal law. To the -extent they were not considered in the state forum, as discussed in this Report, none of the claims individually, nor the claims cumulatively, warrant relief. Thus, to the extent a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed here or in the state forum, all arguments and claims were considered and found to be devoid of merit, even if not discussed in detail here.

### VIII.  Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). To determine whether an evidentiary hearing is needed, the question is whether the

alleged facts, when taken as true, are not refuted by the record and may entitle a petitioner to relief. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016). The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [petitioner's] claim[s] without ]further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing is not required.

## IX.  Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration of the record, this court should deny a certificate of appealability. Notwithstanding, if petitioner does not agree, Petitioner may bring this argument to the attention of the district judge in objections.

## X. Conclusion

Based upon the foregoing, it is recommended that:

1.      the federal habeas petition be DENIED;

2.      a certificate of appealability be DENIED; and,

3.      the case CLOSED.

Objections to this report may be filed with the District Court Judge within fourteen days of

receipt of a copy of the report. Failure to file timely objections shall bar petitioner from a *de novo*

determination by the District Court Judge of an issue covered in this report and shall bar the parties

from attacking on appeal factual findings accepted or adopted by the District Court Judge, except

upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *RTC v. Hallmark*

*Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

SIGNED this 19th day of October, 2020.

UNITED STATES MAGISTRATE JUDGE

cc:    **Peter Cunningham**
       L73833
       Apalachee Correctional Institution East
       Inmate Mail/Parcels
       35 Apalachee Drive
       Sneads, FL 32460
       PRO SE

       **Mitchell A. Egber**
       Attorney General Office
       1515 N Flagler Drive
       9th Floor
       West Palm Beach, FL 33401-3432
       561-837-5000
       Fax: 561-837-5099
       Email: mitchell_egber@myfloridalegal.com